UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

SHALOM GABAY,                                    Civ. Case No.

                Plaintiff,            **COMPLAINT**

-against-                                        **JURY TRIAL DEMANDED**

ROADWAY MOVERS, INC. and ROSS SAPIR,

              Defendants.
-------------------------------------------------------------------X

Plaintiff Shalom Gabay, through his attorneys, Harwood Law PLLC, alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff Shalom Gabay sues defendants Roadway Movers, Inc. ("Roadway") and its President, Ross Sapir ("Sapir"), for violation of federal and state disability discrimination laws and the family medical leave act. Defendants violated those statutes when it terminated Mr. Gabay because of his disability and in retaliation for seeking reasonable accommodations to his work schedule while he was undergoing grueling, post-surgical treatment for brain cancer. In addition, Mr. Gabay sues both defendants for intentional infliction of emotional distress, and sues defendant Roadway for breach of an agreement for 1% of the Roadway's profits for 2021 and other consideration, including for breach the implied covenant of good faith and fair dealing. Plaintiff's statutory claims are based on defendants' violation of: (1) the Americans with Disabilities Act of 1990, as codified by 42 U.S.C. § 112101, *et seq*. ("ADA"); (2) the Family Medical Leave Act of 1993, 29 U.S.C. § 2615 ("FMLA"); and (3) the Florida Civil Rights Act, Title XLIV, FL. St. Ch. 760. Plaintiff seeks compensatory, liquidated and punitive damages, back pay, front pay, damages for emotional distress, prejudgment interest and attorneys' fees.

**JURISDICTION AND VENUE**

2.   This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because it involves claims arising under the laws of the United States, specifically, the ADA and the FMLA.

3.   The Court has diversity jurisdiction over the state and local law claims under 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship between the parties.  Mr. Gabay is a citizen of Florida and defendants are:  (a) a company incorporated in the State of New York, with its principal place of business located at 1135 Bronx River Ave., Bronx, NY 10472; (b) an individual who is a citizen and resident of the State of New York.

4.   The Court has supplemental jurisdiction over the state law and local law claims pursuant to 28 U.S.C. § 1367, because this Court has original jurisdiction under the ADA and the FMLA, and the state law and local law claims arise from the same nucleus of operative facts.

5.   Venue is proper in this district pursuant to 28 U.S.C § 1391(b)(1), because all defendants reside in the State of New York and at least one defendant resides in this judicial district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6.   On March 18, 2022, Mr. Gabay filed his Charge of Discrimination ("Charge of Discrimination") with the United States Equal Employment Opportunity Commission (the "EEOC") against Roadway, alleging discrimination by Roadway and Mr. Sapir based on disability. Pursuant to the work-sharing agreements that the EEOC entered into with Florida, the filing with the EEOC also constitutes a filing with the Florida administrative agencies with jurisdiction over the discrimination laws alleged in this complaint.

7.  Mr. Gabay filed his charge with the EEOC within 300 days of the termination of his employment on November 10, 2021.

8.  On June 7, 2022, the EEOC issued to Mr. Gabay a "Notice of Right to Sue within 90 Days" with reference to his charge of discrimination (hereinafter "Notice of Right to Sue").

9.  Mr. Gabay commenced this action within the time prescribed by the Notice of Right to Sue.

## THE PARTIES

10.  Plaintiff, Mr. Gabay, is an individual residing in the state of Florida.

11.  Mr. Gabay worked for Roadway for approximately 13 years.

12.  Defendant Roadway provides local moving, long-distance moving, interstate moving, international moving, storage, white glove service and packing services.

13.  At the time of the events complained of herein, Roadway maintained and operated a business office located at 845 Third Avenue, 6th Floor, New York, NY 10022.

14.  Upon information and belief, Roadway has more than 100 employees at its New York locations.

15.  Defendant, Mr. Sapir, is an individual who, during the course of Mr. Gabay's employment, served as President of Roadway.

16.  Defendant, Mr. Sapir, is the owner of Roadway.

17.  Defendant, Mr. Sapir, is a resident and citizen of New York.

## STATEMENT OF FACTS

18.  Mr. Gabay worked for Roadway for approximately 13 years.

19.  During Mr. Gabay's employment with Roadway, he worked with extraordinary dedication, which led to promotions, raises, bonuses and commendations for his superior performance.

3

20. While Mr. Gabay was working as a manager of long-distance dispatching, he was responsible for long-distance, and interstate moves.

21. During this period, Roadway experienced enormous growth, and received overwhelmingly positive feedback from its customers.

22. At Mr. Sapir's insistence, Mr. Gabay worked a grueling schedule.

23. Prior to Mr. Gabay's first brain cancer surgery, he had been working six days per week, from 9 a.m. until 11 p.m.

24. Mr. Gabay had his first surgery for brain cancer in 2015 after he suffered a seizure while working and was rushed to a hospital, where the doctors discovered a large brain tumor.

25. Despite his doctor's advice that stress could exacerbate his condition, Mr. Gabay was back working his punishing, full-time schedule, within approximately four weeks of his surgery.

26. Mr. Gabay's hours after his surgery were Monday through Thursday, 9 a.m. until 11 p.m., and Fridays from 9 a.m. until sundown.  On Saturdays, he started answering calls again after sundown and continued until 11 p.m. He also worked on Sundays to make up for the little time off on Saturdays.

27. Despite his frail health condition during the period following his initial surgery, Mr. Gabay was so effective as his job that he received special recognition as Employee of the Year.

28. Mr. Gabay's brain tumor continued to grow, and he was forced to undergo a second surgery on November 2, 2020.

29. Following the second surgery, Mr. Gabay's medical professionals prescribed a post-operative regimen involving radiation therapy, blood work, and chemotherapy, in addition to regular MRI surveillance, and advised him to avoid high-stress situations.

4

30.  When Mr. Gabay returned to work on or about January 8, 2021, he informed Mr. Sapir of the regimen his medical professionals advised, in an effort to secure reasonable accommodations while he underwent such taxing post-operative treatment.

31.  Mr. Sapir agreed to allow him to slowly ramp up to his full-time work schedule to accommodate his post-surgery cancer treatments.

32.  Despite this agreement about Mr. Gabay's post-surgical work schedule,  Mr. Sapir and Roadway did not modify his actual work schedule at all, and expected that Mr. Gabay pick up his grueling schedule where he left off prior to surgery.

33.  Mr. Sapir's demands of Mr. Gabay after his surgery were so extreme that Mr. Gabay's wife was forced to drive him to his radiation therapy and other post-surgical treatments so he could work from the car during the commute to and from the hospital.

34.  In the Spring of 2021, Mr. Gabay and Mr. Sapir met at the JW Marriott Miami Turnberry Resort & Spa.

35. At the time of this meeting, Roadway was facing huge demand for long distance moving services and reduced labor supply due to the pandemic.

36.  Mr. Gabay was working as the manager of long distance moves at that time.

37.  Those long distance moves involved transportation of goods across state lines.

38.  Roadway had a skeleton staff devoted to managing long distance moves and Mr. Gabay was bearing much of the burden of the incredible spike in demand for long-distance moves.

39.  At the time of that meeting, there was strong demand in the moving industry for long distance moving managers with Mr. Gabay's skills.

40.  At the meeting, Mr. Gabay asked for a raise because of the heavy workload Mr. Gabay was carrying due to these conditions.

41. Mr. Sapir acknowledged that Mr. Gabay was deserving of a significant raise but, in lieu of such a raise, Mr. Sapir offered Mr. Gabay 1% of the Roadway's profits for 2021, a company car, an office in Miami and a $10,000 bonus.

42. Mr. Gabay, who is solely responsible for supporting his wife and four children, accepted the offer on the spot, and despite the cancer treatments and toll on his physical and mental well-being, worked dutifully on behalf of Mr. Sapir and Roadway.

43. Based on defendants' agreement to these terms, Mr. Gabay dropped his request for a significant salary raise and  did not look for alternative employment in the then incredibly employee-favorable long-distance-moving job market.

44. Mr. Gabay never received the profit share, the company car or the office.

45. By the end of July 2021, Mr. Gabay was nearing his physical breaking point. Meeting Roadway's work demands without any accommodation for his periodic cancer treatments resulted in significant weight loss and other adverse physical manifestations.

46. On or about Tuesday, July 27, Mr. Gabay explained to Mr. Sapir that he could not sustain his work schedule during his periodic chemotherapy cycles, and that he needed to rest on Sundays falling during such periodic chemotherapy cycles. He explained that chemotherapy is incredibly taxing, and he just needed a little bit of extra downtime to recuperate.

47. Mr. Gabay said he would arrange for Nancy Wales to cover for him, and Mr. Sapir agreed.

48. Mr. Gabay held a meeting on the Friday before his first Sunday off, to prepare everyone for the weekend moves. During the meeting he reminded everyone that he would not be working that Sunday.

49.  On Sunday, August 1, at around 12 p.m. on the day that Mr. Sapir had agreed to give Mr. Gabay off from work, Mr. Sapir called Mr. Gabay on his cell phone while he was with his wife and children.

50.  During the call Mr. Sapir yelled, cursed and berated Mr. Gabay because there was a moving trailer that broke down.  Mr. Sapir told Mr. Gabay that Ms. Wales, who was covering for Mr. Gabay that day, was having difficulty finding tires for the trailer. Mr. Sapir then told Mr. Gabay that this is why he cannot take another day off, and ominously told Mr. Gabay he had a plan for him come September (providing no further detail), and demanded that he immediately call the affected client.

51.  Mr. Gabay said he would have Ms. Wales call the client, but Mr. Sapir insisted that Mr. Gabay make the call immediately even though it was his day off and he was with his family.

52.  Mr. Gabay was so affected by Mr. Sapir's abusive behavior that his hands were shaking, and his wife was afraid he was going to have a stroke.  His children witnessed the conversation with Mr. Sapir, and his 3-year-old was crying.

53.  At this time, Mr. Sapir knew that Mr. Gabay was in the midst of a chemotherapy cycle.

54.  Mr. Sapir's abusive treatment of Mr. Gabay caused him severe emotional distress.

55.  At the end of August, during a video meeting for the long-distance moving department, Mr. Sapir announced that Mr. Gabay would be taking a paid leave of absence to heal.

56.  Mr. Gabay had not requested a leave of absence.

57.  Mr. Sapir said that Mr. Gabay would train Natasha Felder to cover for Mr. Gabay during the leave of absence.

58.  Mr. Gabay trained Ms. Felder as Mr. Sapir had directed.

59.  On September 23, 2021, Mr. Gabay received a letter from Mr. Sapir (forwarded to him via email from Roadway's Human Resources Department) terminating his employment, effective October 23, 2021.

60.  Mr. Gabay was devastated by the termination letter. He could not sleep, had significant anxiety and became severely depressed. After 15 years in the moving business, during which he worked long hours for Roadway and its predecessor company (including through periods of radiation and chemotherapy with no meaningful accommodation from Roadway), he was about to be jobless, in the midst of cancer treatment.

61.  Mr. Gabay became even more concerned for how he would provide for his family when, during a video meeting following Mr. Gabay's receipt of the termination letter, Mr. Sapir told him that he intended to enforce a 1 year non-compete provision in an at-will employment agreement that Mr. Gabay, and other Roadway employees, signed under duress while already employed by Roadway.

62.  Mr. Sapir forcefully asserted that the incredibly broad  non-compete provision prevented Mr. Gabay from working in the moving industry for one year, even if Mr. Gabay's new employer was based outside of New York.  He callously suggested that Mr. Gabay, who built a career in the moving industry, find work in another industry.  Defendants' enforcement of the one year non-compete would leave Mr. Gabay unable to support his family unless he accepted the onerous terms (including a release of his claims against Roadway for discrimination) of the separation agreement offered, and subsequently rescinded, by Roadway.  And even if Mr. Gabay accepted such separation agreement, Mr. Gabay would have no way to support his family after the severance contemplated by that agreement expired (i.e., the severance period was substantially shorter than the non-compete period).

8

63. During a telephone conversation on October 5, 2021, in an effort to justify his termination of Mr. Gabay, Mr. Sapir callously berated Mr. Gabay for being unavailable due to his cancer treatment.

64. During this telephone call, Mr. Sapir shockingly revoked the aforementioned severance offer.

65. Mr. Sapir further berated Mr. Gabay, saying that Mr. Sapir's treatment of Mr. Gabay made Mr. Sapir "look like a son-of-a-bitch."

66. Mr. Sapir's "son-of-a-bitch" comment indicated that Mr. Sapir thought it was Mr. Gabay's fault that Mr. Sapir's erratic and callous treatment of a loyal employee who sacrificed for Roadway made him look bad to Roadway's other employees.

67. On October 7, 2021, Mr. Sapir revealed to Mr. Gabay that his replacement, Ms. Felder (who was based in Atlanta), had resigned because the stress of assuming Mr. Gabay's workload led to her hospitalization for a stress induced episode.

68. Following Ms. Felder's resignation, Mr. Sapir demanded that Mr. Gabay resume working in his former position.

69. Mr. Gabay, under the immense pressure of Mr. Sapir's threat to enforce the aforementioned one-year non-compete if Mr. Gabay sought alternative employment in the moving industry, and hopeful that Mr. Sapir would honor his 1% profit participation, jumped back into his responsibilities, and immediately assumed the gap left by Ms. Felder's resignation.

70. While Mr. Gabay was sacrificing his health and family time for Roadway, and carrying a double load, Mr. Sapir was searching for another person to replace him.

71. On November 10, 2021, after finding a replacement, Mr. Sapir terminated Mr. Gabay again, during a week when Mr. Gabay was undergoing chemotherapy treatment.

72. Mr. Sapir offered Mr. Gabay a new separation agreement which, as compared to the initial separation agreement, reduced his severance from 6 months to 3 months, and included a non-compete provision preventing Mr. Gabay from working in the moving industry for two years – twice the period under his purported employment agreement.

73. Mr. Gabay was devastated that his hard work was once again rewarded with deceit, and he agonized over how he would support his family during the lengthy  non-compete period that Roadway was asserting.

74. After his termination Mr. Gabay, had difficulty sleeping, anxiety, and experienced nausea and vomiting.

75. Mr. Gabay was unemployed for several months following his termination.

76. Mr. Gabay subsequently obtained employment, but at a substantially reduced level of compensation.

77. Defendants intentionally and willfully engaged in unlawful employment practices against Mr. Gabay, including intentionally discriminating against him and terminating his employment on account of his serious medical condition, for seeking and taking an accommodation of medical leave, and for opposing the summary adverse employment actions taken against him in retaliation for Mr. Gabay's assertion of his rights under the ADA and FMLA.

78. Defendants conduct demonstrates outrageous dishonesty, manipulation, malice, and/or reckless indifference to the rights and well-being of Mr. Gabay and entitles Mr. Gabay to recover punitive damages against the Defendants in addition to other damages.

79. Defendants' discriminatory and tortious conduct showed a knowing, reckless and/or willful and malicious disregard for Plaintiff's rights. Defendant's unlawful conduct has caused and

continues to cause Plaintiff to suffer economic damages and severe mental anguish and emotional distress.

## FIRST CAUSE OF ACTION

### *Discrimination and Harassment in Violation of the ADA*

80.  Mr. Gabay repeats the allegations in paragraphs 1 through 79.

81.  At all relevant times, Mr. Gabay was an employee of defendants, and defendants were employers, as those terms are defined in the relevant provisions of the ADA, 42 U.S.C. § 12101, *et seq.*

82.  Mr. Gabay has had, at all relevant times, a disability as that term is defined in the ADA, 42 U.S.C. § 12102(4).

83.  Mr. Gabay was able to perform the essential functions of his job and therefore was at all relevant times a "qualified individual with a disability" within the meaning of the ADA.

84.  Defendants discriminated against Mr. Gabay in violation of the ADA by denying him equal terms and conditions of employment, including but not limited to, terminating him or constructively discharging him, despite his qualifications for his position, because of his disability, because Defendant regarded him as disabled, and/or because of Plaintiff's record of disability.

85.  Defendants discriminated against Mr. Gabay in violation of the ADA by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Mr. Gabay because of his disability, because Defendants regarded him as disabled, and/or because of Mr. Gabay's record of disability.

86.  As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

87. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

88. Defendants' unlawful and discriminatory actions constitute willful violations of the ADA for which Plaintiff is entitled to an award of punitive damages.

89. As a result of these violations, Mr. Gabay has incurred damages including but not limited to back pay, front pay, employment benefits, bonuses, other compensation denied or lost, emotional distress, attorneys' fees, costs and interest.

## SECOND CAUSE OF ACTION

### *Termination in Violation of the ADA*

90. Plaintiff repeats the allegations in paragraphs 1 through 89.

91. Because of his disability, Defendants terminated Mr. Gabay's employment and/or revoked or refused to provide Mr. Gabay with his requested accommodation and reinstatement to his pre-leave position, causing Mr. Gabay harm and leading to the termination from long-term employment.

92. Defendants' unlawful and discriminatory actions constitute willful violations of the ADA for which Plaintiff is entitled to an award of punitive damages.

93. As a result of these violations, Mr. Gabay has incurred damages including but not limited to back pay, front pay, employment benefits, bonuses, other compensation denied or lost, emotional distress, attorneys' fees, costs and interest.

## THIRD CAUSE OF ACTION

### *Retaliation in Violation of the ADA*

94. Plaintiff repeats the allegations in paragraphs 1 through 93.

95.  Mr. Gabay, by requesting reasonable accommodations, has engaged in conduct protected by the ADA.

96.  Mr. Gabay was suspended and terminated from employment by Defendants because of his announced need for accommodations under the ADA, requesting and availing himself of his rights under the ADA, and because of his opposition to the Defendants' violation of his ADA rights.

97.  Defendants' unlawful and discriminatory actions constitute willful violations of the ADA for which Plaintiff is entitled to an award of punitive damages.

98. As a result of these violations, Mr. Gabay has incurred damages including but not limited to back pay, front pay, employment benefits, bonuses, other compensation denied or lost, emotional distress, attorneys' fees, costs and interest.

## FOURTH CAUSE OF ACTION

### *FMLA – Interference with Rights*

99.  Mr. Gabay repeats the allegations in paragraphs 1 through 98.

100.    Defendants are employers under and subject to the Family Medical Leave Act of 1993 as amended. 29 U.S.C.A. §2601 et seq. (the "FMLA").

101.    Mr. Gabay was at all times during his employment by Roadway, highly qualified for his job and an eligible employee under the Family Medical Leave Act, 29 U.S.C.A. §2611(2).

102.    Mr. Gabay's brain tumors, surgery, and period of recovery were serious health conditions which rendered him unable to work the same hours he had worked previously.

103.    Mr. Gabay was an eligible employee under the FMLA to receive time off for a serious health condition or illness.

104.    Mr. Gabay notified Defendants of his serious health condition or illness and his need to reduce his work hours in order to take care of himself.  In at least one instance, Mr. Sapir acknowledged Mr. Gabay's need to take FMLA leave .

13

105.   Mr. Sapir had an obligation to inform Mr. Gabay of his right to take FMLA leave when he needed it and not to interfere with him taking FMLA leave when he needed it.

106.   Mr. Sapir interfered with Mr. Gabay's right to take FMLA leave by, among other things, demanding that he not miss work, forcing him to work when he was not physically fit to do so, harassing him when he was not at work due to his serious health condition or illness, and threatening him for taking time off work.  These actions were in violation of 29 U.S.C. §2615.

107.   As a result of these violations, Mr. Gabay has incurred damages including but not limited to back pay, front pay, employment benefits, bonuses, other compensation denied or lost, liquidated damages, attorneys' fees, costs and interest.

## FIFTH CAUSE OF ACTION

### *FMLA – Retaliation and Unlawful Discrimination*

108.   Plaintiff repeats the allegations in paragraphs 1 through 107.

109.   Defendants retaliated against Mr. Gabay for requesting and taking leave he was entitled to take under the FMLA. Mr. Sapir's retaliation against Mr. Gabay included but was not limited to harassing him, threatening him, demeaning and yelling at him, and ultimately firing him from his job.

110.   Defendant took adverse actions against Mr. Gabay in bad faith for exercising his rights under the FMLA in violation of 29 U.S.C. §2615.

111.   As a result of Defendant's willful violations of the FMLA, Mr. Gabay has incurred damages including but not limited to back pay, front pay, bonuses, employment benefits, other compensation denied or lost, liquidated damages, attorneys' fees, costs and interest.

## SIXTH CAUSE OF ACTION

### *Breach of Agreement (Company to Pay Plaintiff 1% of Roadway's Profits for 2021)*

112.   Plaintiff repeats the allegations in paragraphs 1 through 111.

14

113.  At a meeting at the JW Marriott Miami Turnberry Resort & Spa in the Spring of 2021, as Roadway was facing huge demand for moving services and reduced labor supply due to the pandemic, Mr. Gabay requested that his salary be increased given his incredible work-load.  Mr. Sapir acknowledged that Mr. Gabay was deserving of a significant raise but instead offered Mr. Gabay 1% of Roadway's profits for 2021, a company car, an office in Miami, and a $10,000 bonus. Mr. Gabay accepted the offer at the meeting.

114.  Mr. Sapir's offer, which Mr. Gabay accepted at the meeting, constitutes a binding agreement.

115.  Mr. Gabay  worked dutifully for Roadway in satisfaction of his obligations under such agreement.

116.  Roadway breached the agreement by failing to pay Mr. Gabay the profit share, provide the car and provide the office.

117.  As a result of Roadway's breach, Mr. Gabay has suffered substantial financial damages.

118.  By virtue of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### *Disability Discrimination in Violation of Chapter 760, Florida Statutes*

119.  Mr. Gabay repeats the allegations in paragraphs 1 through 118.

120.  This is an action against Defendants for disability discrimination brought under Florida Civil Rights Act, Title XLIV, FL. St. Ch. 760.

121.  Mr. Gabay has been the victim of discrimination on the basis of his disability or perceived disability. During Plaintiff's employment with Defendants, he was treated differently than similarly situated non-disabled/perceived-as-disabled employees.

122.  Defendants are liable for the differential treatment of Mr. Gabay which adversely affected the terms and conditions of Plaintiff's employment with Roadway.  Defendants controlled the actions and inactions of the persons making decisions affecting Mr. Gabay, or knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Mr. Gabay.

123.  The actions of Mr. Sapir, an agent of Defendant Roadway, which were condoned and ratified by Roadway, were disability/perceived-disability based and in violation of the laws set forth herein.

124.  The discrimination complained of herein affected a term, condition, or privilege of Mr. Gabay's continued employment with Defendants. The events set forth herein led, at least in part, to adverse action against Mr. Gabay.

125.  Defendants' conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability and/or his record of having an impairment.

126.  Defendants' unlawful and discriminatory actions constitute willful violations of the Florida Civil Rights Act, for which Plaintiff is entitled to an award of punitive damages.

127.  As a direct and proximate result of Defendants' conduct described above, Mr. Gabay has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, and is intitled to an award of lost back and front pay, bonuses, and other benefits, in an amount to be determined at trial, attorneys' fees, costs and interest.

## EIGHTH CAUSE OF ACTION

### *Intentional Infliction of Emotional Distress*

128.  Mr. Gabay repeats the allegations in paragraphs 1 through 127.

16

129.   While Mr. Gabay was undergoing chemotherapy treatment, on Sunday, August 1, 2021, on the day that Mr. Sapir had agreed to give him off from work, Mr. Sapir called him on his cell phone while he was with his wife and children.  During the call, Mr. Sapir yelled, cursed and berated Mr. Gabay because, through no fault of his own, there was a moving trailer that broke down.

130.   Mr. Gabay was so affected by Mr. Sapir's hostile and abusive behavior that his hands were shaking, and his wife was afraid he was going to have a stroke.

131.   After terminating Mr. Gabay on September 23, 2021, during a telephone conversation on October 5, Mr. Sapir callously berated Mr. Gabay for being unavailable due to his cancer treatment.

132.   Mr. Sapir also told Mr. Gabay that Mr. Sapir's treatment of Mr. Gabay made Mr. Sapir "look like a son-of-a-bitch."

133.   After Ms. Sapir revoked his severance offer to Mr. Gabay and revoked the termination of Mr. Gabay's employment on October 7, 2021, he once again terminated Mr. Gabay on November 10, 2021 after finding a replacement manager. Mr. Gabay was working while undergoing chemotherapy treatment at the time of such termination.

134.   Defendants threatened to enforce a one-year non-compete agreement against Mr. Gabay, when defendants terminated him in September, and then sought to coerce a two-year non-compete, when they fired Mr. Gabay for a second time in November.

135.   The enforcement of the non-compete agreement and the coercion of an even longer non-compete agreement, would have left Mr. Gabay, who was the sole earner for his wife and four children, unable to support his family.

136.   Defendants' conduct and treatment of Plaintiff, who was suffering from brain cancer and undergoing taxing and severe treatment, was so extreme and outrageous as to exceed the bounds of decency in a civilized society.

137.   By their actions and conduct, Defendants intended to, and did intentionally and recklessly cause Plaintiff to suffer severe emotional distress.

138.   Plaintiff continues to have difficulty sleeping, anxiety, and now experiences nausea and vomiting induced by the trauma and emotional distress suffered at the hands of Defendant.

139.   As a direct and proximate result of defendants' callous and abusive conduct, Plaintiff continues to suffer severe emotional distress, for which he is entitled to an award of damages.

140.   Defendants' extreme and outrageous conduct was knowing, malicious, willful and wanton, entitling Plaintiff to an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

i. On the First Cause of Action, lost wages, including but not limited to back pay, front pay, with benefits, emotional distress damages, compensatory and punitive damages in an amount to be determined at trial, plus attorneys' fees costs, disbursements and prejudgment interest;

ii. On the Second Cause of Action, lost wages, including but not limited to back pay, front pay, with benefits, emotional distress damages, compensatory and punitive damages in an amount to be determined at trial, plus attorneys' fees costs, disbursements and prejudgment interest;

iii. On the Third Cause of Action, lost wages, including but not limited to back pay, front pay, with benefits, emotional distress damages, compensatory and punitive damages in

an amount to be determined at trial, plus attorneys' fees costs, disbursements and prejudgment interest;

iv. On the Fourth Cause of Action, back pay, front pay, employment benefits, bonuses, other compensation denied or lost, liquidated damages, attorneys' fees, costs, disbursements and interest;

v. On the Fifth Cause of Action back pay, front pay, bonuses, employment benefits, other compensation denied or lost, liquidated damages, attorneys' fees, costs, disbursements and interest;

vi. On the Sixth Cause of Action, damages in an amount to be determined at trial, plus costs and prejudgment interest;

vii. On the Seventh Cause of Action, emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, bonuses, and other benefits, in an amount to be determined at trial, plus punitive damages, attorneys' fees, costs, disbursements and prejudgment interest;

viii. On the Eighth Cause of Action, damages for emotional distress and punitive damages, in an amount to be determined at trial, plus costs and prejudgment interest;

ix. Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.


Dated:     New York, New York
           August 12, 2022

                              HARWOOD LAW PLLC
                              *Attorney for Plaintiff*

                    By:     _____
                              Anthony Harwood
                              260 Madison Avenue, 8th Floor
                              New York, NY 10016
                              (212) 867-6820