UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHALOM GABAY,

                   Plaintiff,

                                                   Civ. Case No. 22-cv-06901 (JLR)

       -against-

ROADWAY MOVERS, INC. and ROSS SAPIR,

                Defendants.

------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPLEL ARBITRATION

HARWOOD LAW PLLC

Anthony J. Harwood
260 Madison Avenue, 8th Floor
New York, New York 10016
(212) 867-6820
tony.harwood@aharwoodlaw.com

*Attorney for Plaintiff Shalom Gabay*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………...……............. ii

PRELIMINARY STATEMENT ……………………………………...………….……..... 1

STATEMENT OF FACTS …………………………………………………………...….. 2

STANDARD GOVERNING MOTIONS TO COMPEL ARBITRATION..……..…….…...... 4

ARGUMENT ……………………………………………………………………………. 4

I.  DEFENDANTS CANNOT COMPEL ARBITRATION UNDER THE FEDERAL
    ARBITRATION ACT BECAUSE MR. GABAY IS A TRANSPORTATION
    WORKER …………………………………………………………….…….. 4

    A.  The Court, Not the Arbitrator, Has Jurisdiction to Decide if the Transportation
        Worker Exception Precludes Arbitration under the Federal Arbitration Act …..…… 4

    B.  Mr. Gabay Is Exempt from Arbitration Under the Federal Arbitration Act Because
        He Played a Direct and Necessary Role in the Flow of Goods Across Borders………6

II.  DEFENDANTS CANNOT COMPEL ARBITRATION UNDER STATE LAW ……….13

    A.  Defendants Have Not Asked the Court to Compel Arbitration Under State Law…….13

    B.  The Express Terms of the Arbitration Agreement Bar the Application of State
        Arbitration Law …….………………………………………………………..…...14

    C.  If the FAA Does Not Govern Despite the Contract's Express Terms, then
        New York's Law Barring Arbitration of Discrimination Claims Would Apply …….18

III.  UNDER FEDERAL AND STATE LAW, THE ARBITRATION AGREEEMENT
      IS UNCONSCIONABLE AND UNENFORCABLE …………………………...21

CONCLUSION ………………………………………………………………………… 25

i

# TABLE OF AUTHORITIES

Page(s)

Cases

*67 Wall St. Co. v. Franklin Nat. Bank,*
  37 N.Y.2d 245 (1975)................................................................................................17

*Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  567 F.2d 1174 (2d Cir. 1977) .........................................................................20, 21

*Asplundh Tree Expert Co. v. Bates,*
  71 F.3d 592 (6th Cir. 1995) .............................................................................7

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) .........................................................................................15

*Bailey v. Fish & Neave,*
  8 N.Y.3d 523 (2007) ........................................................................................16

*Berkovitz v. Arbib & Houlberg,*
  *Inc.,* 230 N.Y. 261 (1921)...........................................................................19, 20

*Brennan v. Bally Total Fitness,*
  198 F.Supp.2d 377 (S.D.N.Y. 2002)..........................................................22, 24

*Brower v. Gateway,*
  *2000,* 676 N.Y.S.2d 569 (1st Dep't 1998).........................................................23

*Brown & Brown v. Johnson,*
  25 N.Y.3d 364 (2015).......................................................................................17

*Burke v. PricewaterhouseCoopers LLP Long Term Disability Plan,*
  572 F.3d 76 (2d Cir. 2009) ..............................................................................16

*Circuit City Stores, Inc. v. Adams,*
  532 U.S. 105 (2001) ...................................................................... 4, 6, 7, 8, 12

*Coady v. Nationwide Motor Sales Corp.,*
  32 F.4th 288 (4th Cir. 2022) ...........................................................................25

*Cole v. Burns Int'l Sec. Servs.,*
  105 F.3d 1465 (D.C. Cir. 1997)........................................................................6

*David v. £1 Mktg. Serv., Inc.,*
  979 N.Y.S.2d 375 (2d Dep't 2014)..................................................................22

*Davidovits v. DeJesus Realty Corp.*,
   474 N.Y.S.2d 808 (2d Dep't 1984) ................................................................22

*De Jesus v. Gregorys Coffee Mgmt., LLC*,
   No. 20-CV-6305 (MKB), 2021 WL 5591026 (E.D.N.Y. Nov. 29, 2021) ...............22

*Dickstein v. duPont*,
   443 F.2d 783 (1st Cir.1971)..............................................................................6

*Doctor's Assocs., Inc. v. Casarotto*,
   517 U.S. 681 (1996) .........................................................................................21

*Dumais v. Am. Golf Corp.*,
   299 F.3d 1216 (10th Cir. 2002) ........................................................................25

*Emigrant Mortg. Co. v. Fitzpatrick*,
   95 A.D.3d 1169 (N.Y. App. Div. 2012).............................................................22

*Floss v. Ryan's Fam. Steak Houses, Inc.*,
   211 F.3d 306 (6th Cir. 2000) ............................................................................25

*Gillman v. Chase Manhattan Bank, N.A.*,
   73 N.Y.2d 1 (1988) ..........................................................................................22

*Henry Schein Inc. v. Archer and White Sales, Inc.*,
   139 S.Ct. 524 (2019) ........................................................................................15

*In re Kahn's Application*,
   284 N.Y. 515  (1940)........................................................................................19

*In re Van Dusen*,
   654 F.3d 838 (9th Cir. 2011) ............................................................................14

*Klos v. Lotnicze*,
   133 F.3d 164 (2d Cir.1997) ..............................................................................22

*KMC Co. v. Irving Trust Co.*,
   757 F.2d 752 (6th Cir. 1985) ............................................................................24

*Knipe v. Skinner*,
   999 F.2d 708 (2d Cir. 1993) .............................................................................14

*Landgraf v. USI Film Products*,
   511 U.S. 244 (1994) .........................................................................................20

*Law Debenture Trust Co. v. Maverick Tube Corp.*,
   595 F.3d 458 (2d Cir. 2010) .............................................................................16

iii

*Lenz v. Yellow Transp., Inc.,*
   431 F.3d 348  (8th Cir.2005) ...............................................................................10

*Majewski v. Broadalbin-Perth Cent. Sch. Dist.,*
   91 N.Y.2d 577 (1998)........................................................................................20

*Morgan v. Sundance, Inc.,*
   142 S.Ct. 1708 (2022) ......................................................................................16

*Motorola Credit Corp. v. Uzan,*
   388 F.3d 39 (2d Cir. 2004) ..............................................................................16

*National Equipment Rental, Ltd. v. Hendrix,*
   565 F.2d 255 (2d Cir. 1977) ............................................................................24

*New Prime v. Oliveira,*
   139 S.Ct. 532 (2019) .................................................................................4, 5, 6

*Nicosia v. Amazon.com, Inc.,*
   *834 F.*3d 220 (2d Cir. 2016) .........................................................................4, 21

*Oliveira v. New Prime, Inc.,*
   857 F.3d 7 (1st Cir. 2017), *aff'd sub nom. New Prime Inc. v. Oliveira*, 139 S.Ct. 532 (2019).14

*Palcko v. Airborne Express, Inc.*,
   372 F.3d 588 (3d Cir. 2004) .......................................................................8, 9, 10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
   388 U.S. 395 (1967) .........................................................................................16

*Ragone v. Atl. Video at Manhattan Ctr.,*
   595 F.3d 115 (2d Cir. 2010) .......................................................................21, 22

*Red Cross Line v. Atlantic Fruit Co.,*
   264 U.S. 109 (1924) .........................................................................................21

*Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty.* Renewal,
   35 N.Y.*3d 332, reargument denied sub nom. Raden v. W*7879, LLC, 35 N.Y.3d 1079 (20*20),
   and reargument denied sub nom. Taylor v. 72A Realty Asso*cs., L.P., 35 N.Y.3d 1081 (2020)20

*Rittmann v. Amazon.com, Inc.*,
   971 F.3d 904 (9th Cir. 2020), cert. *denied, 209 L.* Ed. 2d 121 (Feb. 22, 2021) ................17, 18

*Robert Lawrence Co. v. Devonshire Fabrics, Inc.,*
   271 F.2d 402 (2d Cir. 1959) ............................................................................21

*Rojas v. TK Communications, Inc.,*
   87 F.3d 745 (5th Cir. 1996) ...............................................................................7

*Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  85 N.Y.2d 173 (1995) ...................................................................................................16

*Sherman v. Fivesky, LLC*,
  No. 19-cv-8015 (LJL), 2020 WL 5105164, at n.6 (S.D.N.Y. Aug. 31, 2020) ........................14

*Southwest Airlines Co. v. Saxon*,
  142 S.Ct. 1783 (2022) .........................................................................................passim

*Spinelli v. Nat'l Football League*,
  903 F.3d 185 (2d Cir. 2018) ...........................................................................................22

*Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am., (U.E.) Loc. 437*,
  207 F.2d 450 (3d Cir. 1953) ...............................................................................6, 9, 10

*Wilaka Const. Co. v. New York City Hous. Auth.*,
  17 N.Y.2d 195 (1966) .....................................................................................................19

*Wright v. Lewis*,
  76 F.3d 57 (2d Cir. 1996) ...............................................................................................24

*Zamora v. Swift Transp. Corp.*,
  No. EP-07-CA-00400-KC, 2008 WL 2369769 (W.D. Tex. June 3, 2008), *aff'd*, 319 F. App'x
  333 (5th Cir. 2009) ..............................................................................8, 10, 11, 12

  Statutes

9 U.S.C. § 1 ...............................................................................................................passim

9 U.S.C. § 2 ......................................................................................................................21

9 U.S.C. § 4 ........................................................................................................................4

NY LEGIS 160 (2019), 2019 Sess. Law News of N.Y. Ch. 160 (A. 8421), § 8 (McKinney's) ...19

NY LEGIS 160 (2019), 2019 Sess. Law News of N.Y. Ch. 160 (A. 8421), § 16(b) (McKinney's)
  ........................................................................................................................................19

CPLR 7515(a)(2) & (b)(iii) ...........................................................................................18, 19

## PRELIMINARY STATEMENT

Defendants callously fired plaintiff Shalom Gabay from his position as manager of long-distance moving based on his disability, in violation of anti-discrimination laws and the Family Medical Leave Act. During a thirteen-year career with Roadway, Mr. Gabay consistently received exceptional feedback. Nonetheless, defendants fired him after he requested a minor and necessary adjustment to his grueling work schedule, while undergoing chemotherapy, following his second surgery for brain cancer. Defendants then whipsawed him. First, they revoked his termination and demanded that he take a significant demotion. Days later, they demanded that he return to his prior position, after his replacement quit because the stress of assuming Mr. Gabay's duties led to her hospitalization. Then defendants fired Mr. Gabay a second time, after they kept him on just long enough to find yet another replacement. Defendants also threatened to enforce an overly broad and illegal non-compete agreement. That non-compete would have barred him from employment in the moving industry, leaving him unable to support his family, at a time when he was recovering from cancer, and had high medical bills.

Defendants' motion to compel arbitration under the Federal Arbitration Act seeks to deny Mr. Gabay his day in court. That motion fails because the Federal Arbitration Act bars employers from compelling transportation workers into arbitration. Mr. Gabay is a transportation worker because, as manager of long-distance moving, he coordinated the transportation of goods across state lines.

New York's arbitration law also bars defendants from compelling Mr. Gabay to arbitrate his claims of discrimination. Under that law, agreements to arbitrate discrimination claims are null and void.

Moreover, the arbitration agreement is unenforceable under both federal and state law because it is unconscionable. It is unconscionable because defendants coerced the arbitration

agreement through high pressure and deceptive tactics, a large disparity in bargaining power and sophistication, and defendants took advantage of Mr. Gabay when he desperately needed the health insurance his employment provided for his cancer treatments.

## STATEMENT OF FACTS

Defendant Roadway Movers, Inc. ("Roadway") is in the long-distance moving business, providing interstate and international moving services.  (Gabay Dec. ¶ 2.)  Mr. Gabay was Roadway's manager of long-distance moving and had previously been a truck driver for Roadway.  *Id.*

As manager of long-distance moving, Mr. Gabay was directly involved on a daily basis in the transportation of household goods across state or international borders.  *Id.* ¶ 4.  He was responsible for scheduling, planning, monitoring and supervising the timely and efficient loading and delivery of household goods from point of origin to destination, across state lines and international borders.  *Id.*  He was the direct supervisor of approximately 25 drivers, while they were transporting customers' household goods on interstate highways.  *Id.*  He managed 100-120 interstate moving jobs per month.  *Id.*  He had responsibility for: (i) planning and scheduling shipments and loading; (ii) communicating with load managers and loading personnel to ensure trucks were loaded and unloaded correctly; (iii) managing and training trip planners and the return load coordinator; (iv) managing the maintenance and repairs of trucks; (v) responding to telephone calls from drivers who encountered problems in route to deliveries or at deliveries and resolving those problems, including collisions, breakdowns and damage to property during shipments; and (vi) responding to telephone calls from customer service representatives about estimated times of arrivals and updates on the status of shipments.  *Id.* at ¶¶ 5-8.

While working for Roadway, Mr. Gabay had two surgeries for brain cancer.  (Gabay Dec. ¶ 22.)  The first was in 2015.  *Id*.  The second was in November 2020.  *Id*.

On September 4, 2019, Mr. Gabay signed Roadway's standard Dispute Resolution Program Agreement (the "September 2019 Agreement").  (Gabay Dec. ¶ 14.)  Mr. Gabay had no role in drafting that agreement.  *Id*.  Roadway did not ask him for input and did not give him the opportunity to comment on or revise that agreement.  *Id*.

When Mr. Gabay signed that agreement, he was in New York, having temporarily evacuated his home in Florida with his wife and children to seek shelter from Hurricane Dorian. *Id.* ¶ 15.  While temporarily working in Roadway's New York office, Roadway's human resources administrator, Sheila Rivera, called him into her office.  *Id.*  She told him that he was doing a great job, and that she had "employment forms" that he and all the other employees had to sign.  *Id.*  She did not tell him that he should consult with a lawyer nor give him the opportunity to do so.  *Id.*  She did not tell him that by signing the forms he was waiving his right to a jury trial of claims.  *Id.*  He signed the forms, which included the September 2019 Agreement. Id.  He understood he had to do that as a condition of his employment.  *Id*.  At that time, he, his wife and their four young children were dependent on his employment with Roadway for the health insurance it provided, among other things, and he was particularly afraid of losing health coverage because of his cancer treatments.  *Id.*

The September 2019 Agreement incorporates Roadway's Dispute Resolution Program. (Sapir Dec. Ex. A.)  The Dispute Resolution Program is contained in Roadway's Employee Handbook.  (Gabay Dec. Ex.1 p.48.)  The Handbook states that Roadway has the right to discontinue or modify the policies contained in the Handbook at any time.  (Gabay Dec. Ex. 1 pp.1&51.)  The September 2019 Agreement, the Handbook, and an employment agreement that

Mr. Gabay signed, all state that the FAA governs Roadway's "Dispute Resolution Program
Agreement."  (Sapir Dec. Ex. A. pp.1&3; Gabay Dec. Ex. 1 p.49 & Ex. 2 p.6.)

## STANDARD GOVERNING MOTIONS TO COMPEL ARBITRATION

The standard for motions to compel arbitration is "similar to that applicable for a motion
for summary judgment," under which "a court must draw all reasonable inferences in favor of
the non-moving party."  *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 229 (2d Cir. 2016).  If there
is a disputed issue of fact "the court shall proceed summarily to the trial thereof."  *Id*. quoting
9 U.S.C. § 4.

## ARGUMENT

### I. DEFENDANTS CANNOT COMPEL ARBITRATION UNDER THE FEDERAL ARBITRATION ACT BECAUSE MR. GABAY IS A TRANSPORTATION WORKER.

Section 1 of the Federal Arbitration Act ("FAA") provides "nothing herein contained
shall apply to contracts of employment of seamen, railroad employees, or any other class of
workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  Under Supreme Court
precedent, the court, rather than the arbitrator, has exclusive jurisdiction to decide if this
provision exempts Mr. Gabay from arbitration under the FAA.  *New Prime v. Oliveira*, 139 S.Ct.
532, 537-38 (2019).  Supreme Court precedent also shows that Mr. Gabay is exempt because he
is a transportation worker who has "a direct and 'necessary role in the free flow of goods' across
borders."  *Southwest Airlines Co. v. Saxon*, 142 S.Ct. 1783, 1790 (2022), quoting *Circuit City
Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001).

### A. The Court, Not the Arbitrator, Has Jurisdiction to Decide if the Transportation Worker Exception Precludes Arbitration under the Federal Arbitration Act.

In *New Prime,* the Supreme Court held:

Given the statute's terms and sequencing, we agree with the First Circuit that a
court should decide for itself whether  § 1's "contracts of employment" exclusion

4

applies before ordering arbitration. After all, to invoke its statutory powers under §§ 3 and 4 to stay litigation and compel arbitration according to a contract's terms, a court must first know whether the contract itself falls within or beyond the boundaries of §§ 1 and 2. The parties' private agreement may be crystal clear and require arbitration of every question under the sun, but that does not necessarily mean the Act authorizes a court to stay litigation and send the parties to an arbitral forum.

139 S.Ct. at 537-38.

The employer in *New Prime* argued "that an arbitrator should resolve any dispute over § 1's application because of the 'delegation clause' in the parties' contract and what is sometimes called the 'severability principle.'" *Id.* at 538. The delegation clause gave the arbitrator "authority to decide even the initial question whether the parties' dispute is subject to arbitration." *Id.*

The defendants here make the same argument, asserting, based on a provision that "explicitly incorporates AAA rules," that "any objections with respect to the existence, scope or validity of the arbitration are expressly delegated to the arbitrator and, thus, are to be decided in the arbitration, not by the Court." (Defts. Br. p. 7-8; *see also* p. 10.) The Supreme Court rejected that argument in *New Prime*. 139 S.Ct. at 538. It held that the delegation clause was unenforceable because the transportation worker exception under section 1 of the FAA applied. *Id.* Accordingly, because the transportation worker exception applied, the Supreme Court held that "the court of appeals was correct that it lacked authority under the Act to order arbitration, and the judgment is *Affirmed*." *Id*. at 544 (emphasis in original).

Defendants completely ignored this controlling Supreme Court authority in their brief, and failed to bring it to the attention of the Court. Defendants relied exclusively on cases decided before *New Prime* to support their argument that the arbitrator, rather than the court, should decide whether Mr. Gabay's claims are subject to arbitration. Those cases do not support

defendants in light of the clear holding of *New Prime* that the issue of section 1's application is for the court and not the arbitrator.

As shown below, the transportation worker exception of section 1 of the FAA applies to Mr. Gabay.  Accordingly, as in *New Prime*, the Court lacks authority under the FAA to order arbitration.

### B.   Mr. Gabay Is Exempt from Arbitration Under the Federal Arbitration Act Because He Played a Direct and Necessary Role in the Flow of Goods Across Borders.

In *Circuit City Stores, Inc.*, 532 U.S. at 119, the Supreme Court held that section 1 exempts transportation workers from arbitration under the FAA based on the statutory language exempting "any other class of workers engaged in foreign or interstate commerce."  It held that this language "exempts from the FAA only contracts of employment of transportation workers." *Id.*  In so holding, the Court adopted the interpretation that most Courts of Appeals had followed. *Id.* at 109.

The Court in *Circuit City* described transportation workers as workers who play a "necessary role in the free flow of goods . . . ."  *Id.* at 121.  In addition, it gave, as an example, the definition that the D.C. Circuit had adopted:  "those workers 'actually engaged in the movement of goods in interstate commerce.'"  *Id.* at 112, citing *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1471 (D.C. Cir. 1997) (internal quotation marks omitted).  Several other Courts of Appeals, which the Supreme Court followed in adopting the transportation worker exception, had adopted similar definitions of a transportation worker.  *See Dickstein v. duPont,* 443 F.2d 783, 785 (1st Cir.1971) (Section 1 is limited to employees "involved in, or closely related to, the actual movement of goods in interstate commerce."); *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am., (U.E.) Loc. 437*, 207 F.2d 450, 452 (3d Cir. 1953) (Section 1 applies only to workers "who are actually engaged in the movement of interstate or foreign commerce or in

work so closely related thereto as to be in practical effect part of it.");  *Rojas v. TK Communications, Inc.,* 87 F.3d 745, 748 (5ᵗʰ Cir. 1996) (Section 1 exempts only contracts of employment of workers engaged in the movement of goods in commerce.); *Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592, 600–01 (6ᵗʰ Cir. 1995) ( Section 1 "should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are.").

In *Southwest Airlines Co. v. Saxon,* 142 S.Ct. 1783 (2022), the Supreme Court considered whether the transportation worker exception applied to a ramp supervisor, whose work "frequently requires her to load and unload baggage, airmail, and commercial cargo on and off airplanes that travel across the country." *Id.* at 1787.  The Court held that to fall within the transportation worker exception, the "worker must at least play a direct and 'necessary role in the free flow of goods' across borders." *Id.* at 1790, quoting *Circuit City,* 532 U.S. at 121.  As an alternative formulation of the test, the Court stated, "Put another way, transportation workers must be actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce." *Id.*

The Court held that the ramp supervisor was a transportation worker because she loaded and unloaded goods that travelled across borders. *Id.* at 1789.  It based this ruling "on what she does at Southwest, not what Southwest does generally." *Id.* at 1788.  It held that "any class of workers directly involved in transporting goods across state or international borders falls within § 1's exemption." *Id.* at 1789.

The Court rejected the airline's argument "that only workers who physically move goods or people across foreign or international boundaries -- pilots, ship crews, locomotive engineers,

7

and the like – are 'engaged in foreign or interstate commerce." *Id.* at 1791.  The Court held that the transportation worker exception can apply even to workers who "do not physically accompany freight across state or international boundaries." *Id.*

In *Southwest Airlines,* both the Supreme Court and the Court of Appeals declined to address whether the employee's supervisory role was sufficient to make her a transportation worker.  Other courts, however, have addressed that question.  Those courts have ruled that employees who supervise the shipment of goods in interstate commerce, are transportation workers who are exempt from arbitration under the FAA.  *Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3d Cir. 2004) (finding that a manager who does not herself deliver packages, but who personally monitors and directs interstate drivers who do, is a transportation worker); *Zamora v. Swift Transp. Corp.*, No. EP-07-CA-00400-KC, 2008 WL 2369769 (W.D. Tex. June 3, 2008), *aff'd,* 319 F. App'x 333 (5th Cir. 2009) (same).  Mr. Gabay's role extended well beyond supervision.  He actively directed the transportation of goods in interstate commerce.

In *Palcko,* the plaintiff was a Field Services Supervisor.  372 F.3d at 590.  Her duties included "supervising between thirty and thirty-five drivers who delivered packages from Airborne's facility near the Philadelphia International Airport to their ultimate destinations in the Philadelphia area, and picked up packages from customers in the Philadelphia area and brought them back to Airborne's facility for shipment." *Id.*  She also "monitored and improved the performance of the drivers under her supervision to ensure timely and efficient delivery of packages." *Id.*  The court held that she was exempt from arbitration under the FAA based on her work "monitoring and improving the performance of drivers under [her] supervision to insure [sic] timely and efficient delivery of packages." *Id.* at 593 (brackets in original).  The court held, "Such direct supervision of package shipments makes Palcko's work 'so closely related [to

interstate and foreign commerce] as to be in practical effect part of it.'" *Id*. at 593 (brackets in original), quoting *Tenney*, 207 F.2d at 452.

The court rejected the defendant's argument that the exemption clause "should be limited to those truck drivers who physically move the packages." *Id*. at 593. It held that accepting that limitation "would unnecessarily narrow the section 1 exemption in a way never intended by the FAA; had Congress intended the residual clause of the exemption to cover only those workers who physically transported goods across state lines, it would have phrased the FAA's language accordingly." *Id*. at 593-94.

Mr. Gabay, like the plaintiff in *Palcko*, was the direct supervisor of a large number of truck drivers while they transported household goods across state and international borders. (Gabay Dec. ¶ 4.) His responsibilities included, monitoring and supervising the timely and efficient delivery of goods, from their point of origin to their destinations, across state lines and at times international borders. *Id*. In addition, he had responsibility for: (i) planning and scheduling shipments and loading; (ii) communicating with load managers and loading personnel to ensure trucks were loaded and unloaded correctly; (iii) managing and training trip planners and the return load coordinator; (iv) managing the maintenance and repairs of trucks; (v) responding to telephone calls from drivers who encountered problems in route to deliveries or at deliveries and resolving those problems, including collisions, breakdowns and damage to property during shipments; and (vi) responding to telephone calls from customer service representatives about estimated times of arrivals and updates on the status of shipments. *Id*. at ¶¶ 5-8. He also managed the entire long-distance moving department. *Id*. at ¶ 9. This shows a far higher level of involvement in interstate and foreign commerce than the plaintiff in *Palcko*. These facts show that Mr. Gabay's work, in the words of the *Palcko* court, was "so closely

related [to interstate and foreign commerce] as to be in practical effect part of it." *Id*. at 593 (brackets in original), quoting *Tenney*, 207 F.2d at 452.

In *Zamora*, the plaintiff, like Mr. Gabay, began his employment with the defendant as a driver.  2008 WL 2369769, at *1.  He later held positions as Planner and Planning Manager, and was the Terminal Manager at the time defendant fired him.  *Id*.  As Terminal Manager, his primary job responsibilities included "maintaining overall responsibility for the successful and profitable operation of the terminal, including all assigned personnel, assets and customers." *Id*.

In ruling that the Terminal Manager in *Zamora* fell within the transportation worker exception, the court applied an eight-factor test that the Eighth Circuit adopted in *Lenz v. Yellow Transp., Inc.,* 431 F.3d 348  (8th Cir.2005).  Those factors are:  1) whether the employee works in the transportation industry; 2) whether the employee is directly responsible for transporting goods in interstate commerce; 3) whether the employee handles goods that travel interstate; 4) whether the employee supervises employees who are themselves transportation workers; 5) whether like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA; 6) whether the vehicle itself is vital to the commercial enterprise of the employer; 7) whether a strike by the employee would disrupt interstate commerce; and 8) the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties.  *Id.* at 352.

The court in *Zamora* held that the terminal manager was a transportation worker applying the eight-factor *Lenz* test.  *Zamora*, 2008 WL 2369769, at *7-8.  It found that "The first, second, sixth, seventh, eighth factors weigh heavily in favor of finding Zamora a transportation worker. The third and fifth factors weigh against this finding and the fourth factor is neutral." *Id.* at *8. It ruled that Zamora, a terminal manager, was a transportation worker because "the majority of

10

the factors weigh in favor of finding Zamora a transportation worker under the FAA, and the factors individually weigh heavily so." *Id.*

Mr. Gabay, like the plaintiff in *Zamora*, meets the standard of a transportation worker under the *Lenz* test. First, he worked in the transportation industry because he was an employee of a large moving company. (Gabay Dec. ¶ 2.) Second, "as manager of long-distance moving" (*id.*), he had "direct responsibility for the transportation of goods in interstate commerce." *Zamora,* 2008 WL 2369769, at *7. He was "directly involved on a daily basis in the transportation of household goods across state or international borders." (Gabay Dec. ¶ 4.) He was "responsible for scheduling, planning, monitoring and supervising the timely and efficient loading and delivery of household goods from the point of origin to their destination, across state lines and at times international borders." *Id*. He was the "direct supervisor of Roadway's drivers, while they were transporting our customers' household goods on interstate highways." *Id*. He "managed 100-120 interstate moving jobs per month" and "directly supervised approximately 25 truck drivers." *Id*. He was responsible for resolving problems arising from "collisions, breakdowns or damage to property during shipments," he and his staff "managed the maintenance of all tractors and trailers," and he was responsible for tracking and reporting the financial targets of the long-distance moving department. *Id*. at ¶¶ 7-9. Like the plaintiff in *Zamora*, he had:

> a direct connection to the amount of goods carried in interstate commerce, the speed with which the goods traveled through the channels of interstate commerce, and the efficiency of the instrumentalities of interstate commerce, that is the trucking company, the trucking terminal, and the trucks themselves. He was employed to ensure the smooth and continuing operation of the trucks and their drivers in interstate commerce. This factor weighs heavily in favor of a finding that Zamora was a transportation worker.

Mr. Gabay, like the plaintiff in Zamora, did not physically handle the goods that were moving in interstate commerce, so this weighs against him being a transportation worker. *See*

11

*Zamora,* 2008 WL 2369769, at *7.  However, the fourth factor weighs in favor of Mr. Gabay because he supervised the drivers who were transportation workers in interstate commerce.  *See id.*  As in Zamora, the fifth factor weighs against him being a transportation worker, because as the court stated in Zamora, "the Court has been unable to find any evidence of the existence of special arbitration legislation for the trucking industry in 1925, the year that the FAA was enacted."  *See id.* at *8.

The sixth and seventh factors, as in *Zamora*, weigh in favor of finding Mr. Gabay a transportation worker.  The truck "is critical to the operations and the economic viability" of a moving company.  *Id.*  Thus, the sixth factor favors a finding that Mr. Gabay is a transportation worker.  In addition, a strike by Mr. Gabay and other long-distance moving managers, "would negatively impact interstate commerce because trucking constitutes a significant instrumentality of interstate commerce."  *Id*.  Thus, the seventh factor supports a finding that Mr. Gabay is a transportation worker.

The eighth factor supports a finding that Mr. Gabay is a transportation worker because there is a strong nexus between his job and the trucks used for transportation.  As in *Zamora*, "the truck is integral to his job responsibilities" deploying trucks for "the successful and profitable operation" of the long-distance moving department.  *Zamora,* 2008 WL 2369769, at *8.  Thus, as in *Zamora*, the majority of factors weigh heavily in favor of finding Mr. Gabay is a transportation worker.

This same evidence supports a finding that Mr. Gabay is a transportation worker under the test the Supreme Court articulated in *Southwest Airlines*.  It shows that Mr. Gabay played "a direct and 'necessary role in the free flow of goods' across borders."  *Southwest Airlines,* 142 S.Ct. at 1790, quoting *Circuit City,* 532 U.S. 142 at 121.

Defendants completely failed to address the transportation worker exception in their motion, despite the Supreme Court trilogy of *New Prime, Circuit City and Southwest Airlines*, and numerous other federal cases discussed above, that show the transportation worker exception bars defendants from compelling arbitration of Mr. Gabay's claims under the FAA. This is a fatal flaw in their motion, especially when, in the parties' joint status letter to the Court, Mr. Gabay's counsel argued that under *Southwest Airlines* employers cannot compel transportation workers such as Mr. Gabay into arbitration under the FAA. Defendants' counsel responded in the joint status letter that arbitration agreement "is not encompassed in the 'transportation worker exception' of the FAA." Thus, defense counsel was clearly aware that the issue would be before the Court. Yet defendants failed to address the transportation worker exception in its motion or in the joint submission. They have thereby failed to meet their burden to prove there is an agreement under which Mr. Gabay must arbitrate his claims.

## II.   DEFENDANTS CANNOT COMPEL ARBITRATION UNDER STATE LAW.

Defendants cannot compel arbitration under state law for three reasons. First, defendants moved to compel arbitration solely on the basis of the FAA, without asserting a state law basis. *Infra* Point A. Second, the express terms of the arbitration agreement preclude state law as a basis for compelling arbitration. *Infra* Point B. Third, an agreement to arbitrate discrimination claims is null and void under New York State law, which is the law that would govern under the arbitration agreement's choice of law provisions if, *arguendo,* the express choice of the FAA as the governing law is invalid. *Infra* Point C.

### A.   Defendant Has Not Asked the Court to Compel Arbitration Under State Law.

Defendants moved to compel arbitration solely on the basis of "the Federal Arbitration Act, 9 U.S.C. §§ 1-16 . . . ." (Defts. Br. p. 1.) Nowhere in their brief or other motion papers do

defendants assert that the Court should compel arbitration based on state law or any law other than the FAA.

"When the only basis for seeking arbitration in federal court is the FAA, the district court can grant the requested relief only if it has authority to act under the FAA." *Oliveira v. New Prime, Inc.,* 857 F.3d 7, 15 (1st Cir. 2017), *aff'd sub nom. New Prime Inc. v. Oliveira,* 139 S.Ct. 532 (2019), citing *In re Van Dusen,* 654 F.3d 838, 843 (9th Cir. 2011).  As shown above, the FAA does not give the Court authority to grant the requested relief because Mr. Gabay is a transportation worker.  *Supra* Point I.

Moreover, because defendants did not assert state law as a basis to compel arbitration in their motion and supporting submissions, it would be improper for them to raise state law as a ground for compelling arbitration for the first time in their reply submissions.  *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)( "Arguments may not be made for the first time in a reply brief.")*; Sherman v. Fivesky, LLC,* No. 19-cv-8015 (LJL), 2020 WL 5105164, at n.6 (S.D.N.Y. Aug. 31, 2020) ("In the first instance, it is improper to seek new relief on reply.").  This is especially so because counsel for Mr. Gabay advised defense counsel and the Court in a joint status letter that, "As the Supreme Court held in *Southwest Airline Co. v. Saxon,* 142 S.Ct. 1783 (2022), employers cannot compel transportation workers into arbitration under the FAA."  (ECF Doc, No. 12.)  This shows defense counsel knew that the Court would have before it the question of whether it could compel arbitration under the FAA.  Thus, defendants had every reason to raise the state law basis in their moving submissions in case the FAA ruling went against them.

## B.   The Express Terms of the Arbitration Agreement Bar the Application of State Arbitration Law.

In three different documents, defendants agreed that the FAA governs.  Those documents are the September 2019 Agreement, the Employee Handbook and the Employment Agreement.

Defendant drafted each of these documents, without Mr. Gabay's input or revisions.  (Gabay Dec. ¶¶ 10, 14 & 18.)

The September 2019 Agreement clearly states, in two nearly identical paragraphs, that the FAA governs, and New York law does not govern, the "validity, coverage or enforceability" of the arbitration agreement.  The relevant language in the September 2019 Agreement first appears on page one.  It states:

> All disputes arising under this Dispute Resolution Program shall be adjudicated pursuant to New York law, without regards to its conflict of laws principals. Notwithstanding the foregoing, any disputes regarding the validity, coverage or enforceability of this Dispute Resolution Program Agreement shall be governed by the Federal Arbitration Act.

Ex. A., p.1.  This same language also appears on page 49 of the Employee Handbook.  (Gabay Dec. Ex. 1, p.49).

The September 2019 Agreement contains a nearly identical provision on page 3.  It states:

> I understand that all disputes arising under the Dispute Resolution Program shall be adjudicated pursuant to New York law, without regards to its conflict of laws principals, except for any disputes regarding the validity, coverage or enforceability of this Dispute Resolution Program Agreement or the arbitration provision contained herein, which shall be governed by the Federal Arbitration Act.

Ex. A., p.3.

The Employment Agreement, which bears Mr. Gabay's signature, and is dated December 11, 2019, contains a separate paragraph titled Dispute Resolution.  That paragraph includes the following:  "I understand that Roadway's Dispute Resolution Program Agreement is governed by the Federal Arbitration Act."  (Gabay Dec. Ex. 2, pp.5-6.)

Arbitration agreements are "on an equal footing with other contracts" and must be enforced "according to their terms."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *accord Henry Schein Inc. v. Archer and White Sales, Inc.,* 139 S.Ct. 524, 529 (2019)

("Under the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms."). The federal policy favoring arbitration "is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Morgan v. Sundance, Inc.,* 142 S.Ct. 1708,  1713 (2022) quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, n.12 (1967). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind." *Id.* With arbitration agreements, as with other agreements, "The court's role is limited to interpretation and enforcement of the terms agreed to by the parties; it does not include the rewriting of their contract and the imposition of additional terms." *Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 85 N.Y.2d 173, 182 (1995); *accord Burke v. PricewaterhouseCoopers LLP Long Term Disability Plan,* 572 F.3d 76, 81 (2d Cir. 2009) (Under New York law a "court must not rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous.") (internal citations omitted); *Law Debenture Trust Co. v. Maverick Tube Corp.,* 595 F.3d 458, 468 (2d Cir. 2010), quoting *Bailey v. Fish & Neave,* 8 N.Y.3d 523, 528 (2007) ("courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing."); *Motorola Credit Corp. v. Uzan,* 388 F.3d 39, 51 (2d Cir. 2004) (When "defendants wish to invoke the arbitration clauses in the agreements at issue, they must also accept the Swiss choice-of-law clauses that govern those agreements.")

The terms of the arbitration agreements in this case are clear. The September 2019 Agreement, and the Handbook, make the FAA expressly applicable to the "validity, coverage or enforceability" of the agreement to arbitrate. Moreover, they explicitly foreclose the application of New York law, stating that the FAA applies, "Notwithstanding" that New York law applies to all other "disputes arising under the Dispute Resolution Program." Similarly,  the Employment

16

Agreement expressly states that "Roadway's Dispute Resolution Program Agreement is governed by the Federal Arbitration Act." Applying New York law, or other state law, in place of the FAA, would improperly rewrite the terms of the agreements. Therefore, under the foregoing authorities, it would be improper to apply the law of New York or another state to compel Mr. Gabay to arbitrate his claims.

Choice of law provisions are enforceable unless they would violate "some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." *Brown & Brown v. Johnson,* 25 N.Y.3d 364, 368 (2015) (internal citations omitted). Applying the contractually express choice of the FAA as the governing law, to keep Mr. Gabay's claims in court rather than arbitration, would not violate fundamental justice, morals or tradition. Defendants would still be able to obtain the same level of justice in court, which would be available in arbitration.

Moreover, even if, *arguendo*, there was an ambiguity about the governing law, the rules for interpreting contracts would still bar the application of state law. Under New York law, any ambiguity must be construed against Roadway, as the drafter of the contract. *67 Wall St. Co. v. Franklin Nat. Bank*, 37 N.Y.2d 245, 249 (1975) ("a contract must be construed most strongly against the party who prepared it . . . ."); *see also Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 920 (9th Cir. 2020), *cert. denied,* 209 L. Ed. 2d 121 (Feb. 22, 2021) (Holding, under Washington state law: "Because it is not clear that the parties intended to apply Washington law to the arbitration provision in the event the FAA did not apply, we construe ambiguity in the contract against Amazon to avoid that result.")

In *Rittman*, the Ninth Circuit Court of Appeals, construing a similar choice of law provision, held that the FAA's transportation worker exception prevented the employer from compelling

arbitration.  971 F.3d at 921.  The relevant language stated that the law governing a terms of

service agreement was:

> the law of the state of Washington without regard to its conflict of laws principles,
> except for Section 11 of [the] Agreement, which is governed by the Federal
> Arbitration Act and applicable federal law." The TOS further provides that, "If
> any provision of this Agreement is determined to be unenforceable, the parties
> intend that this Agreement be enforced as if the unenforceable provisions were
> not present and that any partially valid and enforceable provisions be enforced to
> the fullest extent permissible under applicable law.

971 F.3d at 908 (brackets in original).  The reference to Section 11 in the terms of service

agreement was to the arbitration provision.

The court in Rittman held that it could not excise the choice of the FAA as the governing

law because that would be an improper "rewriting of the contract."  *Id*. at 919-20.  Moreover, the

court held that to the extent there was any ambiguity in whether state law should apply if the

FAA did not, it construed the ambiguity against the employer as  the drafter of the agreement.

*Id.*

As shown above, defendants cannot compel Mr. Gabay to arbitrate under the FAA because

he is a transportation worker.  They cannot compel Mr. Gabay to arbitrate under the law of New

York or another state, because that would rewrite the agreements, which state that the FAA

governs.  Therefore, the arbitration agreements do not support defendants' request for an order

from this Court to compel Mr. Gabay to arbitrate.

### C.   If the FAA Does Not Govern Despite the Contract's Express Terms, Then New York's Law Barring Arbitration of Discrimination Claims Would Apply.

If, *arguendo*, the FAA does not govern despite the express terms of the arbitration

agreement, defendants still cannot compel arbitration because the arbitration agreement is null

and void under New York's arbitration law.  The relevant portion of New York's arbitration law

is Section 7515 of the New York CPLR.  Under CPLR 7515, any arbitration clause that makes

arbitration of discrimination claims mandatory is a "prohibited clause" which is "null and void." CPLR 7515(a)(2) & (b)(iii).

The arbitration clause in the September 2019 Agreement states that it includes "disputes concerning workplace discrimination . . . ."  (Sapir Dec. Ex. A, pp. 1 & 3.)  This is a "prohibited clause"  that is null and void because it mandates arbitration of discrimination claims.

When section 7515 was initially adopted, it only prohibited mandatory arbitration of sexual harassment claims.  *See* NY LEGIS 160 (2019), 2019 Sess. Law News of N.Y. Ch. 160 (A. 8421), § 8 (McKinney's).  However, an amendment later expanded it to all discrimination claims.  *Id.*  That amendment was adopted August 12, 2019, and became effective October 11, 2019.  *Id.* §16(b).

Mr. Gabay signed the September 2019 Agreement on September 4, 2019.  That is after the amendment was adopted but before it became effective.  Nonetheless, the following case law shows that the amendment applies to render the arbitration agreement null and void.

The New York Court of Appeals has consistently held that changes in arbitration law apply to arbitration proceedings instituted after the effective date of the law, even when the arbitration agreement was adopted prior to the change of law.  *Wilaka Const. Co. v. New York City Hous. Auth.*, 17 N.Y.2d 195, 204 (1966) (Applying section 7501 of New York's arbitration law "to arbitration agreements entered into before its effective date . . . ."): *In re Kahn's Application,* 284 N.Y. 515, 521  (1940) (Holding that a change in arbitration law applied to an arbitration agreement made prior to the change in law.); *Matter of Berkovitz v. Arbib & Houlberg, Inc.,* 230 N.Y. 261, 271 (1921) ("A promise that differences will be arbitrated is not illegal and a nullity without reference to the law in force when differences arise. Since it is directed solely to the remedy, its validity is to be measured by the public policy prevailing when a remedy is sought.");

19

The Second Circuit has so held too. *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 F.2d 1174, 1176, 1180 n.6, & 1181 (2d Cir. 1977) (Denying a motion to stay arbitration because new regulations "which became effective on November 29, 1976, after the [arbitration] agreement was executed, were retroactive in their operation and rendered the agreement to arbitrate null and void . . . .").

*In Matter of Berkovitz*, the New York Court of Appeals applied changes in arbitration law to agreements that pre-date the change in law because laws governing arbitration are procedural and remedial. 230 N.Y. at 270. The court distinguished changes in arbitration law, which it described as "part of the law of remedies" and "a form of procedure," from substantive laws that change the "definition of the rights and wrongs out of which differences grow." *Id.*

In addition, outside the arbitration context, the New York Court of Appeals and the U.S. Supreme Court have held that procedural and remedial statutes apply to conduct that pre-dates the statute. *Landgraf v. USI Film Products*, 511 U.S. 244, 280-281 (1994) (Holding that a provision in a statute that created a right to a jury trial was procedural with no retroactive effect if applied to cases that had commenced but had not proceeded to trial before enactment of the statute); *Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, *reargument denied sub nom. Raden v. W7879, LLC*, 35 N.Y.3d 1079 (2020), and *reargument denied sub nom. Taylor v. 72A Realty Assocs., L.P.*, 35 N.Y.3d 1081 (2020) ("a statute that affects only 'the propriety of prospective relief' or the nonsubstantive provisions governing the procedure for adjudication of a claim going forward has no potentially problematic retroactive effect even when the liability arises from past conduct . . . .") (citations omitted); *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577 (1998) ("'remedial' legislation or statutes governing procedural matters should be applied retroactively . . . .) (citations omitted);

Moreover, courts have frequently held that arbitration statutes are procedural or remedial. *Ames,* 567 F.2d at 1180 ("Arbitration is a form of procedure, not of substantive law."); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402 (2d Cir. 1959) ("For the purpose of determining whether a state act enforcing arbitration is constitutional or an intrusion upon federal admiralty jurisdiction, the Supreme Court held arbitration to be 'remedial.'") (quoting *Red Cross Line v. Atlantic Fruit Co.,* 264 U.S. 109 (1924)).

New York's amendment barring arbitration of discrimination claims is remedial and procedural, not substantive. By forcing discrimination claims into court, it gives the plaintiff a different forum, with different procedures, to pursue the same rights the plaintiff would have had to pursue in arbitration before the amendment. Therefore, under the foregoing authorities, the amendment to the arbitration law renders null and void the clause in the September 2019 Agreement mandating arbitration of discrimination claims, even though the agreement pre-dates the amendment.

## III. UNDER FEDERAL AND STATE LAW, THE ARBITRATION AGREEMENT IS UNCONSCIONABLE AND UNENFORCEABLE.

Section 2 of the FAA provides that arbitration agreements are enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. The Supreme Court has held that this means the contract defense of "unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). State law governs whether an arbitration agreement is unconscionable under the FAA. *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 229 (2d Cir. 2016). The courts apply New York law when, as here, the arbitration agreement contains a clause that states New York law governs. *Ragone v. Atl. Video at Manhattan Ctr.,* 595 F.3d 115, 121 (2d Cir. 2010).

21

The defense of unconscionability "seeks to prevent sophisticated parties with grossly unequal bargaining power from taking advantage of less sophisticated parties." *Spinelli v. Nat'l Football League,* 903 F.3d 185, 208 (2d Cir. 2018).  A contract is unconscionable under New York law when it is "grossly unreasonable or unconscionable in the light of the mores and business practices of the time . . ." *Ragone,* 595 F.3d at 121.  The party asserting unconscionability must show both procedural and substantive unconscionability.  *Id.*; *accord Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10–11 (1988).  Procedural unconscionability requires a "lack of meaningful choice" during contract formation.  *Id.* Substantive unconscionability exists when agreement is "unreasonably favorable" to the party seeking to enforce the agreement.  *Gillman,* 73 N.Y.2d at 12.

When the material facts are undisputed, the court may rule on unconscionability without a hearing.  *De Jesus v. Gregorys Coffee Mgmt., LLC*, No. 20-CV-6305 (MKB), 2021 WL 5591026, at *6 (E.D.N.Y. Nov. 29, 2021) citing *Emigrant Mortg. Co. v. Fitzpatrick*, 95 A.D.3d 1169 (N.Y. App. Div. 2012).  However, "[w]here there is doubt ... as to whether a contract is fraught with elements of unconscionability, there must be a hearing where the parties have an opportunity to present evidence with regard to the circumstances of the signing of the contract, and the disputed terms' setting, purpose and effect." *De Jesus,* No. 20-cv-6305, 2021 WL 5591026, at *6, quoting *Davidovits v. DeJesus Realty Corp.,* 474 N.Y.S.2d 808, 809 (2d Dep't 1984); *accord David v. £1 Mktg. Serv., Inc.*, 979 N.Y.S.2d 375, 379 (2d Dep't 2014).

Here, there is both procedural and substantive unconscionability.  Defendants  used "high pressure or deceptive tactics," and took advantage of a large disparity in "bargaining power" and sophistication between the parties to "coerce" Mr. Gabay's "acceptance of onerous terms." *Brennan v. Bally Total Fitness,* 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002) citing *Klos v. Lotnicze*,

133 F.3d 164, 168 (2d Cir.1997) ("Typical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis with no opportunity to change the terms."); *Brower v. Gateway 2000,* 676 N.Y.S.2d 569, 573 (1st Dep't 1998) (describing disparity in bargaining power as turning on the "experience and education of the party claiming unconscionability").

The circumstances under which Mr. Gabay signed the arbitration agreement prove procedural unconscionability. When he signed the agreement, he was in a very vulnerable and stressful situation. He and his family had evacuated to New York from their home in Florida to seek shelter from Hurricane Dorian. (Gabay Dec. ¶ 15.) While in New York, temporarily working from Roadway's office, Roadway's human resources administrator, Sheila Rivera, called him into her office. *Id*. She said he was doing a great job, and that she had "employment forms" that he and everyone else "had to sign." *Id*. She, as a human resources professional, had a high level of professional knowledge and sophistication about employment agreements. Mr. Gabay was unsophisticated about those matters, having only a high school diploma, a year and a half of college education, with no college degree, and having worked most of his career for Roadway and its predecessor. *Id.* ¶ 2. Ms. Rivera did not tell him he should consult with a lawyer about the documents he was signing, nor did she give him the opportunity to do so. *Id*. She did not tell him that by signing the forms he was waiving his right to a jury trial of claims between him and Roadway. *Id.* ¶ 15. Moreover, the September 2019 Agreement does not state that he should consult with a lawyer and does not advise him that he was waiving his jury right by agreeing to arbitration. (Sapir Dec. Ex. A.) He understood that he had to sign the forms, which included the September 2019 Agreement, as a condition of continued employment with Roadway. (Gabay Dec. ¶ 15.) When he signed the forms, he, his wife and his four young

23

children were dependent on his job for the health insurance it provided.  *Id.*  He was afraid of losing health coverage because he had brain cancer.  *Id.*

This was a high-pressure situation.  Mr. Gabay and his family were more than a thousand miles from their home, seeking shelter from a hurricane.  Mr. Gabay's cancer left him and his family critically dependent on maintaining health coverage through employment.

There was a disparity of bargaining power and sophistication.  Roadway was a large, economically powerful business, which employed a sophisticated, human resources professional to obtain an agreement from a worker without a college degree.

Roadway presented the agreement on a take it or leave it basis.  It did not give Mr. Gabay the opportunity to consult with a lawyer.

The agreement contained a superficial description of the arbitration process that omits any mention of the rights employees waive.  It did not provide important information about waiver of jury rights.  The constitutional right to a jury is a "fundamental" and "its protection can only be relinquished knowingly and intentionally."  *National Equipment Rental, Ltd. v. Hendrix,* 565 F.2d 255, 258 (2d Cir. 1977); *KMC Co. v. Irving Trust Co.,* 757 F.2d 752, 755-58 (6th Cir. 1985).  Moreover, "a presumption exists against its waiver."  *National Equipment Rental Ltd.,* 565 F.2d at 258; *accord Wright v. Lewis,* 76 F.3d 57, 60 (2d Cir. 1996).  When, as here, there is "gross inequality in bargaining power," a jury waiver is "neither knowing nor intentional." *National Equipment Rental Ltd.,* 565 F.2d at 258.

The terms were one sided as well.  Roadway had the right to modify the agreement at any time, and it had no obligation to give notice of the changes.  (Gabay Dec. Ex. 1, pp. 1 & 51). Numerous courts have invalidated arbitration agreements on this ground.  *Brennan,* 198 F.Supp.2d at 384 (holding an arbitration unconscionable because terms allowing the employer

"to unilaterally modify the contract at any time" made the agreement "unreasonably favorable" to the employer); *Coady v. Nationwide Motor Sales Corp.,* 32 F.4th 288, 293 (4th Cir. 2022) ("Because the Modification Clause gives Nationwide the right to change or abolish those policies, procedures and benefits without notice, the Arbitration Agreement is illusory under Maryland law."); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) ("We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."); *Floss v. Ryan's Fam. Steak Houses, Inc.*, 211 F.3d 306, 315–16 (6th Cir. 2000) (The employer's ability to alter the arbitration agreement without notice or consent rendered the arbitration agreement illusory).  For all of these reasons, the September 2019 Agreement is both procedurally and substantively unconscionable.

**CONCLUSION**

For the foregoing reasons, Mr. Gabay respectfully urges the Court to deny defendants' motion to compel arbitration.

Dated: New York, New York
      December 16, 2022

HARWOOD LAW PLLC
*Attorney for Plaintiff*

By: _____

Anthony Harwood
260 Madison Avenue, 8th Floor
New York, NY 10016
(212) 867-6820